**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**RYAN J. O'Connor,**

                **Plaintiff,**

      **v.**                                      **5:11-CV-01425**

**COMMISSIONER OF SOCIAL SECURITY,**

                **Defendant.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**

### DECISION & ORDER

      Plaintiff Ryan J. O'Connor brought this suit under the Social Security Act ("Act"), 42

U.S.C. §§ 405(g), 1383(c)(3), to review a final determination of the Commissioner of Social

Security ("Commissioner") denying his application for disability insurance benefits ("DIB") and

supplemental security income ("SSI").  Plaintiff alleges that the decision of the Administrative

Law Judge ("ALJ") denying the applications for benefits is not supported by substantial

evidence and contrary to the applicable legal standards.  The Commissioner argues that the

decision is supported by substantial evidence and made in accordance with the correct legal

standards. Pursuant to Northern District of New York General Order No. 8, the Court

proceeds as if both parties had accompanied their briefs with a motion for judgment on the

pleadings.

**I.     BACKGROUND**

On the alleged onset date of February 22, 2008, Plaintiff was 26 years old.  T 76.

Plaintiff reported past work as a custodian and satellite TV technician.  T 80.  Plaintiff's date

last insured is December 31, 2013.  T 26.

**A.     Educational Background**

Throughout highschool Plaintiff was in special education classes.  T 85.  On June 8,

1998, the Committee on Special Education determined Plaintiff was  "emotionally disturbed"

and recommended "specialized supplementary instruction[,]"  "instruction from a special

education teacher[,]" and resource room.  T 124, 126.   In 1998, an individualized education

program report from when Plaintiff was in 9th grade noted that Plaintiff received time limit

extensions for one period, test items read, answers recorded in an alternate manner via a

word processor, and he was allowed to use a calculator or arithmetic tables.  T 132.  Plaintiff

was also noted to be in resource room for the year for forty minutes a day, five days a week,

as well as counseling one day a week for forty minutes.  T 132.  The report noted that

Plaintiff "seem[s] disjointed" when making conversation.  T 133.  He also was noted to "need

assistance in spelling, grammar, and punctuation" and had "difficulty condensing material

into important notes."  T 133.  Additionally, Plaintiff was noted to have "often illegible"

handwriting and needs "assistance in refocusing on the tasks he is working on."  T 133.

Further, it was noted that his full-scale IQ score was 88, and he was "slow" in math and

written expression.  T 134.  Plaintiff was further noted to "nee[d] help attending to the tasks

he is  working on" and "organizing his thoughts[,]" notebooks, "and the information he

knows." T 134. In April 2000, school psychologist, Karen Gwilt, evaluated Plaintiff. T 161-64. On examination, Ms. Gwilt found that "discrepancies in his intellectual and achievement testing . . . indicate that there is a physical base to his learning problems in school." T 163. She further found that Plaintiff "remains highly distracted by both internal and extern stimuli[,]" his "reality testing remains poor[,]" and he "feels overwhelmed and anxious." T 163. Additionally, she noted that he "exhibit[s] obsessive and ruminative qualities wherein once he is troubled by a person or situation he has difficulty thinking of anything else." T 163-64. She opined that he was "appropriately identified [as] [l]earning [d]isabled[,]" "[v]isual motor speed is a relative weakness[,]" and "spelling and writing are particularly difficult" for him. T 163. Ms. Gwilt stated that Plaintiff "remains eligible to be identified [e]motionally [d]isturbed[,]" and recommended that he continue resource room and counseling. T 164.

Plaintiff is a highschool graduate, T 219, and also has two years of college education. T 85. Plaintiff completed Adult Training in computer technology through B.O.C.E.S., as well as part of the two-year computer networking program at ITT Technical Institute. T 238.

### B.   Medical Background

On August 29, 2003, Plaintiff was treated at the emergency room by Phillip R. Tatnall, M.D., after he had a "terrible headache [and] loss of consciousness" T 167. On examination, Dr. Tatnall found Plaintiff "speaks in one-word responses and . . . it [was] quite hard to understand" him. T 167. Dr. Tatnall diagnosed Plaintiff as suffering from "loss of consciousness secondary to right-sided headache which persists and is of unclear etiology." T 168. On August 31, 2003, Plaintiff was discharged from the emergency room. T 165-66. Dr. Kark diagnosed Plaintiff as suffering from migraine headaches and a right temporal lobe

seizure.  T 165.  Dr. Kark prescribed Depakote and Folic acid.  T 166.  Dr. Kark

recommended it was "dangerous for him to drive and do a number of other activities."  T 165.

On February 4, 2004, Allan Yozawitz, Ph. D., evaluated Plaintiff for a

neuropsychological evaluation.  T 237-48.  On examination, Dr. Yozawitz found Plaintiff had

muscular tension, "a shy and anxious appearance[,]" "a reluctance to guess when

uncertain[,]" and "rapid speech."  T 241.  Additionally, Plaintiff had a "low average [s]entence

[r]epetition [t]est performance[,] . . . spelling errors . . . slightly dysfluent oral reading of

sentences associated with apparent errors of visuoperception[,] and "poor written expressive

skill."  T 241-42.  Dr. Yozawitz opined Plaintiff would need "a minimally stressful position[;] . .

. providing him with tasks that are not acutely time sensitive"; and he could not work in a

noisy environment or one that required multitasking.  T 248.  On review of Plaintiff's records,

"parent report, observation, and . . . questioning[,]" Dr. Yozawitz diagnosed Plaintiff as

suffering from Pervasive Developmental Disorder, not otherwise specified, anxiety,

anxious/hyper-aroused state, attention dysfunction, obsessive compulsive behaviors, and

avoidant behaviors.  T 239-40.

On June 4, 2004, Robert Todd, M.D. treated Plaintiff.  T 184-88.  Dr. Todd diagnosed

Plaintiff as suffering from "[b]y history . . . syncope and collapse."  T 187.  Dr. Todd

prescribed Axert and Depakote ER.  T 188.  On July 30, 2004, Dr. Todd treated Plaintiff for

his headaches.  T 181.  Dr. Todd diagnosed Plaintiff as suffering from a headache syndrome

and prescribed Folic Acid, Clonidine, Axert, and Depakote ER.  T 181.  On January 9, 2008,

Plaintiff complained of syncope to Peter Caluwe, N.P.  T 205.  On examination, Nurse

Caluwe found "there are some questionable psychological issues in regard to  . . . whether

he hyperventilates."  T 207.  Nurse Caluwe diagnosed Plaintiff as suffering from syncope.  T 207.

On January 17, 2008, Plaintiff complained of right knee pain to Karen Sebastian, M.D. T 209.  On examination, Dr. Sebastian found Plaintiff's "right knee is a little tender medially and it is a little swollen."  T 209.  She further found that he was unable "to fully extend at the knee" and "could only bend it to about a little further than 90 degrees" because of pain.  T 209.  Dr. Sebastian diagnosed Plaintiff as suffering from right knee pain and prescribed crutches, Naprosyn, and Lortab.  T 210.

On June 4, 2008, consultative examiner, Kalyani Ganesh, M.D., evaluated Plaintiff for an internal medicine examination.  T 215-18.  Dr. Ganesh diagnosed Plaintiff as suffering from migraines, and a history of learning disability, back pain, and knee pain. T 217.  Dr. Ganesh opined Plaintiff had "[n]o limitation sitting, standing, walking, or the use of upper extremities."  T 217.

On the same date, consultative examiner, Dennis Noia, Ph. D., evaluated Plaintiff for a psychiatric evaluation.  T 219-22.  On examination, Dr. Noia found Plaintiff's "intellectual functioning is estimated to be in the low average range."  T 221.  Dr. Noia opined Plaintiff "appears to be capable of understanding and following simple instructions and directions."  T 221.

On June 12, 2008, State agency review psychiatrist R. Altsmansberger completed a mental Residual Functioning Capacity ("RFC").  T 223-35.  Dr. Altsmansberger opined Plaintiff did not have a medically determinable impairment.  T 223-35.

On July 23, 2009, Plaintiff complained of vomiting episodes followed by unconsciousness to Francisco Gomez, M.D.  T 254.  Dr. Gomez diagnosed Plaintiff as

suffering from transient alteration of awareness-spells and prescribed Sertraline.  T 255.  On September 24, 2009, Plaintiff complained of vomiting episodes followed by unconsciousness to Dr. Gomez.  T 249.  Dr. Gomez again diagnosed Plaintiff as suffering from transient alteration of awareness and suspected "his symptoms are a form of somatization."  T 249.  Dr. Gomez prescribed Sertraline.  T 249.

On September 29, 2009, Plaintiff complained of suffering a fall resulting in right-sided numbness and a severe headache to Sherradyn Mack, P.A. while being treated at the emergency room. T 256.  On examination, she noted that a "CT scan of his cervical spine showed . . . [t]here  was C5-C6 disc space narrowing, and there were osteophytes encroaching on the left lateral recess."  T 257.  Physician Assistant Mack diagnosed Plaintiff as suffering from paresthesias on the right side and status post fall.  T 257.  She prescribed Motrin for his headaches.  T 257.

On January 28, 2010 and on April 14, 2010, Plaintiff complained of "episodes with vomiting, followed by unconsciousness" to Susama Verma, M.D.  T 259-63.  Plaintiff stated "his headaches are transient and occur nearly 3 times per week."  T 259.  Dr. Verma diagnosed Plaintiff as suffering from transient alteration of awareness-spells and migraine, atypical, vertebrobasilar.  T 260, 262.  Dr. Verma prescribed Topamax.  T 260.  On April 23, 2010, Dr. Verma completed a medical source statement based on treating Plaintiff from January 28, 2010 to April 14, 2010.  T 264-67.  She noted Plaintiff was diagnosed as suffering from transient alteration of awareness-spells, a learning disability, and pervasive developmental disorder.  T 264-65.  She opined that Plaintiff was seriously limited, but not precluded, in his ability to: remember work-like procedures; maintain attention for two-hour segments; sustain an ordinary routine without special supervision; complete a normal

workday and workweek without interruptions from psychologically- based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; and deal with normal work stress.  T 266.  She further noted that Plaintiff would need to take 2-3 breaks for 10-15  minutes secondary to his learning disability.  T 267.  She further opined that Plaintiff was capable of low stress jobs due to his vertebrobasilar migraines as its "symptoms worsen with anxiety and increased psychosocial stressors."  T 267.  Additionally, she opined Plaintiff would be absent "more than four days per month" and his impairments cause good and bad days.  T 267.  Furthermore, she opined his learning disability and vertebrobasilar migraines affect his  "ability to work at a regular job on a sustained basis."  T 267.

On October 25, 2010, Paul Kent, M.D., in a statement to the Appeals Council, opined that Plaintiff "has uncontrolled episodes with loss of consciousness several times a week" and is thus "unable to work due to these debilitating episodes."  T 8, 268.

### B.      Procedural Background

On March 5, 2008, Plaintiff protectively filed a Title II application for SSI and on April 3, 2008 he protectively filed an application for DIB.  In both applications, Plaintiff alleged disability due to learning disability, neurological migraines, and emotional disturbance.  At a hearing, Plaintiff requested that the record be held open pending receipt of additional medical evidence.  This request was granted.  The Administrative Law Judge ("ALJ") received the additional evidence.

After a hearing, the ALJ denied the application.  The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2013.  The ALJ further found that Plaintiff engaged in substantial gainful activity from April 2008 to January

2009.  He also found that there was a continuous twelve-month period during which Plaintiff did not engage in substantial gainful activity.  Proceeding with the analysis, the ALJ found that Plaintiff suffered from vertebrobasilar migraine, pervasive developmental disorder, history of low back and knee pain, and degenerative disc disease at C5-6, and that these conditions are severe impairments.  The ALJ found that Plaintiff did not establish any other severe impairment.  The ALJ found insufficient medical signs or laboratory findings to suggest a seizure disorder.  The ALJ further concluded that Plaintiff's mental disorders did not satisfy the applicable requirements.

The ALJ next found that Plaintiff does not have an impairment or combination of impairments that satisfied the applicable regulations and that he has the residual functional capacity to perform a full range of sedentary work at all exertional levels, but cannot be exposed to heights or dangerous machinery, and is only capable of performing low stress work.  Lastly, the ALJ determined that Plaintiff has the residual functional capacity to perform his past relevant work as a housekeeper at a nursing facility.  Consequently, the ALJ denied Plaintiff's application for benefits.  The Appeals Council denied a request for review.  Plaintiff then commenced this action, making several arguments challenging the Commissioner's decision, which the Court will address seriatim.

## II.    Standard of Review

The Court's review of the Commissioner's determination is limited to two inquiries. *See* 42 U.S.C. § 405(g).  First, the Court determines whether the Commissioner applied the correct legal standard. *See Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999); *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998); *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990); *Shane v. Chater*, No. 96-CV-66, 1997 WL 426203, at *4 (N.D.N.Y July 16, 1997)(Pooler,

J.)(citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).  Second, the Court must

determine whether the Commissioner's findings are supported by substantial evidence in the

administrative record. *See Tejada*, 167 F.3d at 773; *Balsamo*, 142 F.3d at 79; *Cruz*, 912 F.2d

at 11; *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).  A Commissioner's finding will

be deemed conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g); *see*

*also Perez*, 77 F.3d at 46; *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)("It is not the

function of a reviewing court to determine de novo whether a Plaintiff is disabled.  The

[Commissioner's] findings of fact, if supported by substantial evidence, are

binding.")(citations omitted).  In the context of Social Security cases, substantial evidence

consists of "'more than a mere scintilla'" and is measured by "'such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*,

402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L. Ed.2d 842 (1971)(quoting *Consolidated*

*Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L. Ed. 126 (1938)).  Where

the record supports disparate findings and provides adequate support for both the Plaintiff's

and the Commissioner's positions, a reviewing court must accept the ALJ's factual

determinations. *See Quinones v. Chater*, 117 F.3d 29, 36 (2d Cir. 1997)(citing *Schauer v.*

*Schweiker*, 675 F.2d 55, 57 (2d Cir.1 982)); *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir.

1990). However, although the reviewing court must give deference to the Commissioner's

decision, the Act is ultimately "'a remedial statute which must be "liberally applied;" its intent

is inclusion rather than exclusion.'" *Vargas v. Sullivan*, 898 F.2d 293, 296 (2d Cir.

1990)(quoting *Rivera v. Schweiker*, 717 F.2d 719, 723 (2d Cir. 1983)).

**III.    DISCUSSION**

        **A.    Whether the ALJ Failed to Obtain an Opinion from Dr. Gomez Concerning**

**Plaintiff's Function-By-Function Limitations**

Plaintiff first contends that the ALJ committed legal error by failing to obtain an opinion from Dr. Gomez concerning Plaintiff's functional limitations, thereby failing to properly develop the record.  Defendant responds that the ALJ was not required to obtain a functional analysis from Dr. Gomez because one was provided by Dr. Verma, who worked with Dr. Gomez.  Inasmuch as Drs. Gomez and Verma worked in the same office, the medical practice is listed under Dr. Verma's name, the medical records demonstrate that Dr. Verma took over Plaintiff's care and treatment from Dr. Gomez, and Dr. Verma provided an assessment of Plaintiff's functional limitations, the Court finds it was unnecessary to obtain another assessment directly from Dr. Gomez.

**B.      Whether the ALJ Failed to Fully Reconcile His RFC Assessment with the Opinions of Dr. Verma**

Plaintiff contends that the ALJ correctly noted Dr. Verma's opinion concerning Plaintiff's limitations, but failed to reconcile her limitations concerning work ability with the residual functional capacity determination.  Specifically, it is claimed that the ALJ failed to address the findings that Plaintiff is seriously limited in his ability to remember work like procedures, maintain attention for a two-hour segment, sustain an ordinary routine without special supervision, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, and deal with normal work stress.  Plaintiff also disputes the ALJ's having rejected Dr. Verma's opinion concerning Plaintiff's likely absenteeism rate (four days per month) as speculative.

Proper deference must be afforded to the ALJ's decision, and an ALJ's decision will

be sustained even where substantial evidence may support Plaintiff's position. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).  It is also within the ALJ's discretion to accept or reject a physician's estimates of absenteeism.  *See Robertson v. Astrue*, No. 09-CV-0501-A, 2011 WL 578753, at *4 (W.D.N.Y. Feb. 9, 2011).  The ALJ found that there was "no support in the record for Dr. Verma's determination that the claimant would be absent from work for more than four days each month . . . ."  T 32.  However, contrary to this statement is Plaintiff's wife's testimony that she believed Plaintiff had seven episodes within the past month, and witnessed probably five of them.  T 312-13.  Plaintiff's testimony could also support this proposition in that he testified that he had two episodes within the past two weeks.  T 290.  However, the objective medical evidence in the record provides substantial evidence to support the ALJ's finding that this statement is speculative.  For example, Plaintiff's visits to the emergency room or complaints to medical professionals regarding his "spells" occurred at most twice a month, and were sporadic since 2003.  Plaintiff's physicians, as stated, ruled out a seizure disorder as a diagnosis.  T 264.

There are also some inconsistencies within Dr. Verma's medical source statement.  For example, she indicates that Plaintiff is "unlimited or very good" in the category of his ability to "maintain regular attendance and be punctual within customary, usually strict tolerances."  T 266.  This contradicts her later statement that Plaintiff is likely to be absent more than four days per month as a result of his impairments.  T 267.  Similarly, her opinions in the medical source statement are somewhat contradictory to her treatment notes that Plaintiff appeared alert; oriented to time, place and person; had normal memory; had normal attention span and concentration; and had a fund of knowledge normal to conversation.  T 262; T 259.  Thus, the Court finds that, while the ALJ did not fully credit the medical source's

statement, he did credit the objective findings by Plaintiff's treating physician.  It may fairly be said based on the medical evidence of record that the medical source statement overstates the objective medical findings in Plaintiff's medical records, including with respect to any potential absenteeism rate.  These findings as reported in Dr. Verma's medical records are consistent with the findings of consultative psychiatric examiner Dr. Noia who opined that Plaintiff's recent and remote memory skills were intact, as was his attention and concentration.  T 220-22.  Based upon the above analysis, the Court finds that the ALJ's determination is supported by substantial evidence.

**C.    Whether the ALJ committed harmful error by affording substantial weight to the opinion of Dr. Ganesh**

Plaintiff claims that the ALJ committed harmful error by affording substantial weight to Dr. Ganesh, a consultive examiner, because Dr. Ganesh rendered an incomplete opinion. Plaintiff also alleges that consultive examinations cannot provide substantial evidence to defeat treating source opinions.

The Social Security Regulations state that the "medical report must be complete enough to help us determine the nature, severity, and duration of the impairment, and residual functioning capacity."  20 C.F.R. § 404.1519n(b).  On June 4, 2008, the date of the examination with Dr. Ganesh, Plaintiff's chief complaints were "neurological, migraine, mental/emotional disturbance, learning disabled."  T 215. Plaintiff did not allege limitations regarding his abilities to hear, speak or travel.  T 216; *see Washington v. Astrue*, No. 5:12-cv-39, slip op. 6044877, at 4 (N.D.N.Y. Dec. 5, 2012) (finding that where a claimant does not allege limitations in the ability to hear, speak or travel, a medical opinion failing to address

those limitations is nonetheless complete).  In fact, Plaintiff reported that he can shop daily, and that he is capable of driving himself and taking public transportation.  T 216.  Dr. Ganesh reported that Plaintiff could squat fully, stand normally, rise from the chair without difficulty, and that Plaintiff's musculoskeletal, extremity, and hand motor activity of hands were all normal.  T 217.  Plaintiff did not allege a limitation in those areas, thus it is reasonable that Dr. Ganesh did not consider them.  Accordingly, Dr. Ganesh's opinion was sufficiently complete.

As to Plaintiff's contention that a consultive examination may not provide substantial evidence to defeat a treating source opinion, "it is well settled that the opinion of a consultive examiner can override that of a treating physician." *Martin v. Astrue*, No. 7:10-CV-1113, 2012 WL 4107818, at *13 (N.D.N.Y. Sept. 19, 2012).  Regardless, the ALJ gave "great weight" to Dr. Verma's opinion, Plaintiff's treating physician, and only "substantial weight" to Dr. Ganesh despite stated inconsistencies in Dr. Verma's opinions.  Accordingly, this Court finds that the ALJ applied the correct legal standards in assessing Dr. Ganesh's opinion.

> **D.    Whether the ALJ failed to correctly apply the Psychiatric Review Technique**

Plaintiff argues that the ALJ failed to properly apply the Psychiatric Review Technique when making his RFC finding.  This technique requires the ALJ to "assess an individual's limitations and restrictions from a mental impairment."  SSR 96-8p (S.S.A.), 1996 WL 374184, at *4.  It requires a more "detailed" assessment by itemizing various functions found in the categories of the mental disorders listings in 12.00 of the Listings of Impairments.  *Id.* If the claimant is determined to have a medically determinable impairment, the ALJ must rate the degree of functional limitation resulting from the impairments, *Petrie v. Astrue*, 412 F.

App'x 401, 408 (2d Cir. 2011) (citing 20 C.F.R. § 404.1520a(b)(2)), and include specific findings regarding the claimant's degree of limitation in each. *see Kohler v. Astrue*, 546 F.3d 260, 267 (2d Cir. 2008).  The ALJ must conduct an analysis in all four functional categories: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation.  20 C.F.R. § 404.1520a(c)(3).  In assessing the degree of limitation in the first three categories, the ALJ uses a five-point scale: none, mild, moderate, marked, and extreme.  20 C.F.R. § 404.1520a(c)(4).  The last category is assessed on a four-point scale: none, one or two, three, four or more.  *Id.*  When determining a claimant's mental RFC, the ALJ should consider factors such as reports of the claimant's activities of daily living and work activity, testimony of third parties about the claimant's performance and behavior, and level of intellectual functioning.  SSR 85-16 (S.S.A), 1985 WL 56855, at *2.  An ALJ's failure to provide a function-by-function analysis might require remand, however, in certain circumstances, an ALJ's failure to do so "might constitute harmless error, provided that the absence of the analysis did not frustrate the meaningful review of the ALJ's overall RFC assessment."  *Desmond v. Astrue*, No. 11-CV-0818, slip op. 6648625, at *6 (N.D.N.Y. Dec. 20, 2012).

While Plaintiff contends that the ALJ failed to supply a complete function-by-function analysis of Plaintiff's mental limitations, after reviewing the ALJ's determination and the record as a whole, this Court finds that the ALJ properly assessed the evidence in reaching Plaintiff's RFC.  *See Lynch v. Astrue*, No. 07-CV-249-JTC, 2008 WL 3413899, at *4 (W.D.N.Y. Aug. 8, 2008).  The ALJ found that Plaintiff had no exertional limits, could not be exposed to any heights or dangerous machinery, and should be limited to low stress jobs.  T 32.  The ALJ did consider, but only gave "some weight" to the Psychiatric Review Technique

Form ("PRTF") that Dr. Altsmanberger prepared, who opined that Plaintiff did not have a medically determinable mental impairment, which suggests less impairment than the ALJ found.  T 29.  The ALJ also noted that no physician that assessed Plaintiff indicated that Plaintiff was disabled, (T 31), nor did Dr. Noia diagnose Plaintiff with a mental impairment (T 33).  Further, Plaintiff did not allege any episodes of decompensation.

The ALJ addressed each functional domain found in the Psychiatric Review Technique.  As to daily living, the ALJ found that the claimant had mild restrictions in daily living.  T 28.  The ALJ considered that the claimant was able to engage in a "wide range of independent daily activities."  T 31.  The ALJ proceeded to list the activities that Plaintiff was able to engage in that related to the functional domain such as personal hygiene, taking public transportation, cooking, cleaning, shopping, and maintaining a residence.  *See* 20 C.F.R. § 404 Subpart P App'x A (c)(1); T 31.  The ALJ also noted that Plaintiff could care for his infant son while his wife was at work.  T 31.

The ALJ also addressed Plaintiff's social capabilities, and found that Plaintiff had mild difficulties in social functioning.  T 28.  The ALJ considered Dr. Verma's assessment, which indicated that Plaintiff had a limited but satisfactory ability to "work in coordination with or proximity to others without being unduly distracted" and "get along with coworkers and peers without unduly distracting them or exhibiting behavioral extremes."  20 C.F.R. § 404 Subpart P App'x A (c)(2); T 32.  The ALJ also considered Dr. Noia's opinion that Plaintiff was able to relate to and interact moderately with others (T 33), that Plaintiff got along well with friends and family and during the examination, Plaintiff was responsive, cooperative and his manner of relating, social skills and overall presentation was moderately adequate (T 28).  Plaintiff also related to Dr. Ganesh that he goes out to shop and eats out at restaurants, which the

ALJ also considered.  T 28.

The ALJ also appropriately considered Plaintiff's concentration, persistence, and pace by addressing a number of factors from Dr. Noia's psychiatric examination of Plaintiff (T 28-29), as well as Dr. Verma's medical source statement, to which he gave "great weight" (T 32). The ALJ found that the claimant had moderate difficulties in maintaining concentration, persistence, or pace.  T 28.

Dr. Noia opined that Plaintiff's intellectual functioning was within low average range and that his general fund of information was appropriate.  T 29.  Dr. Noia noted that Plaintiff's attention and concentration were intact, as were his recent and remote memory skills.  T 28-29.  Plaintiff was able to do "serial threes," and Dr. Noia also opined that Plaintiff's thought processes were coherent and goal-oriented.  T 29.  The ALJ also considered the fact that Plaintiff received special education classes, and went on to note that Plaintiff graduated high school with a regular diploma and attended two years of college.  T 29.

Dr. Verma opined that Plaintiff possessed an unlimited or very good ability to ask simple questions or request assistance.  T 32.  She also opined that the Plaintiff had a limited but satisfactory ability to understand and remember very short and simple instructions, carry out very short and simple instructions . . . make simple work-related decisions, accept instructions and respond appropriately to criticism from supervisors . . . respond appropriately to changes in a routine work setting, and be aware of normal hazards and take appropriate precautions."  T 32.  Dr. Verma opined that Plaintiff was seriously limited but not precluded in his ability to "sustain an ordinary routine without special supervision, complete a normal weekday and workweek without interruptions from psychological based symptoms, perform at a consistent without an unreasonable number and length of rest periods, and deal with

normal work stress."  T 32.  In Dr. Verma's opinion, Plaintiff was still capable of low stress jobs despite his impairments, but that he would be absent from work more than four days each month, which, as discussed, the ALJ rejected.  T 32.  The ALJ also considered Dr. Noia's consultive psychiatric examination in which he opined that the Plaintiff "appeared to be capable of understanding and following simple instructions and directions, performing simple and some complex tasks with supervision and independently . . . and maintaining attention and concentration for tasks."  T 33.  This includes consideration of Dr. Noia's assessment of Plaintiff's attention and concentration in Plaintiff's ability to do counting, simple calculations, and serial threes.  *See* 20 C.F.R. § 404 Subpart P App'x A (c)(3); T 28-29.  While the ALJ did not categorically go through each functional domain, he did address each one, and he assessed Plaintiff's capabilities and limitations in each one.  Accordingly, the ALJ applied the appropriate legal standards in assessing Plaintiff's mental RFC.

### E.      Whether the ALJ failed to properly apply the appropriate legal standards in assessing Plaintiff's credibility

An ALJ has discretion to evaluate the credibility of a claimant and to make an independent judgment based on medical findings regarding the true extent of the claimant's symptoms.  *Mimms v. Heckler*, 750 F.2d 180, 186 (2d Cir. 1984); *Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983).  It is the function of the Commissioner, not the reviewing court, to "resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Caroll v. Sec'y of Health and Human Serv.*, 705 F.2d 638, 642 (2d Cir. 1983); *see Gernavage v. Shalala*, 882 F. Supp. 1413, 1419 n.6 (S.D.N.Y. 1995)(An ALJ's determination with respect to the credibility of witnesses is given great deference because the ALJ heard the testimony and observed the demeanor of the witnesses). Further, Plaintiff

must produce appropriate, probative evidence in support of any subjective statements of symptoms, 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4), and the ALJ's decision to discount Plaintiff's statements of symptoms must be accepted by a reviewing court unless it is clearly erroneous. *Centano v. Apfel*, 73 F. Supp. 2d 333, 338 (S.D.N.Y.1999).  "An ALJ's evaluation of Plaintiff's credibility is entitled to great deference if it is supported by substantial evidence." *Nelson v. Astrue*, No. 5:09-CV-00909, 2010 WL 3522304, at *6 (N.D.N.Y. Aug. 12, 2010).

When an individual has a medically determinable impairment that could reasonably be expected to produce the symptoms alleged, but the objective evidence does not substantiate the alleged intensity and persistence of the symptoms, the ALJ considers other factors in assessing the individual's subjective symptoms. These factors include: (1) Plaintiff's daily activities; (2) the nature, duration, frequency and intensity of his symptoms; (3) precipitating and aggravating factors; (4) the type of medication and other treatment or measures which Plaintiff uses to relieve pain and other symptoms; (5) treatment other than medication Plaintiff has received for relief of pain and other symptoms; (6) any other measures used by Plaintiff to relieve pain and other symptoms; and (7) other factors concerning Plaintiff's functional limitations and restrictions due to pain or other symptoms. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

Here, the ALJ found that neither Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms were fully credible, nor were his subjective complaints of disability.  T 31.  The evidence, including the objective testing, clinical examination results and medical opinions, as well as Plaintiff's own testimony, does not corroborate Plaintiff's subjective limitations to the extent alleged, and the ALJ's credibility determination was not clearly erroneous.  Plaintiff testified that he could cook, shop, do

laundry and clean daily, watch TV, listen to the radio, go to restaurants, shower, bathe and dress himself daily, and drive a car for up to two and a half hours at a time and had no restrictions on his license.  T. 216.  These statements were appropriately considered by the ALJ in making his determination.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).  Plaintiff also argues that basic activities, such as caring for oneself and basic daily activities, should not be held against him in determining disability.  *See Pl.'s Brief*, at 16; *see Stoesser v. Commissioner of Social Sec.*, No. 08-CV-643, 2011 WL 381949, at 7 (N.D.N.Y. Jan. 19, 2011) (finding the ALJ's reasoning was flawed to discount the opinion of plaintiff's treating physician because Plaintiff testified that he could not sit for more than an hour and was not completely incapacitated); *see also Balsamo v. Chater*, 142 F.2d 75, 81 (2d Cir. 1998) (finding that Plaintiff's ability to perform activities such as ride the subway, read, watch TV and listen to the radio was not indicative of being able to hold a sedentary job).  However, unless the conduct alleged by Plaintiff, and used in the ALJ's determination of an ability to hold a job, truly showed that the claimant was capable of working, "it would be a shame to hold this endurance against him."  *Nelson v. Bowen*, 882 F.2d 45, 49 (2d Cir. 1989).

The fact that Plaintiff can perform daily tasks indicates that his spells may be less frequent than he claims, and further that he has the mental capabilities to perform such tasks independently.  The ALJ considered all medical and laboratory evidence regarding Plaintiff's migraines and alleged seizures, knee and back pain, and such testing was normal.  T 31. Although Plaintiff and his wife still claim that he suffers from seizures, Plaintiff's physician explicitly ruled out the possibility that Plaintiff suffered from a seizure disorder.  T 264.

Further, Plaintiff alleges that the ALJ erred in finding that, "the claimant's statements concerning intensity, persistence, and limiting effects of his symptoms are not fully credible to

the extent they are inconsistent with the above residual functional capacity assessment."  T

31.  The Commissioner does not address this comment.  The Court finds that the ALJ's

credibility determination is sufficiently substantiated.

The ALJ considered the required factors in determining Plaintiff's credibility, explained

them sufficiently, and it is apparent from the record that the ALJ's decision was supported by

substantial evidence, thus due deference should be afforded to his determination.  In *Nelson*

*v. Astrue*, No. 5:09-CV-00909, 2010 WL 3522304, at *6-7 (N.D.N.Y. Aug. 12 2010), the ALJ's

credibility determination of the claimant was not "sufficiently specific" because the ALJ failed

to specify the weight given to Plaintiff's testimony, to discuss the factors set forth in the

regulations, to identify medical records to which he referred, and to explain why he thought

the plaintiff was "generally unpersuasive."  The court also found it "questionable" that "the

propriety of the ALJ's finding that Plaintiff was credible only to the extent that her statements

were consistent with his own RFC determination."  *Id.* at *6.  Certainly if the ALJ's credibility

determination is only based on his own RFC determination, remand would be appropriate.

Here, however, the ALJ explicitly stated the credibility given to the Plaintiff's comments, he

addressed the factors in the regulations, and the ALJ cited with specificity the evidence that

he relied on in considering Plaintiff's credibility beyond his RFC determination.  The ALJ not

only considered Plaintiff's numerous daily independent activities, but he considered objective

medical tests and opinions the suggested Plaintiff did not suffer from a seizure disorder.  T

31.  He also considered Plaintiff's medication use, the lack of side effects and the fact that

Plaintiff just recently started taking medication.  T 31.  The ALJ also considered Plaintiff's

wife's testimony, as well as his job history, and the fact that the Plaintiff collected

unemployment during the period of his alleged disability on a continuous basis since 2009.  T

32.  While Plaintiff claims that the consideration regarding unemployment benefits was error, nothing in the record suggests that this fact was conclusive, that the ALJ gave it considerable weight, or that the ALJ precluded Plaintiff from the benefits he is applying for in this proceeding.  The ALJ also took into account Plaintiff's demeanor at the hearing and found that Plaintiff "was able to attend to the hearing proceedings closely, fully, and without any noted distractions."  T 31.  Accordingly, the Court finds that the ALJ's determination of Plaintiff's credibility was supported by substantial evidence.

### F.    Whether the ALJ properly applied the appropriate legal standards in assessing Plaintiff's witness's credibility

Plaintiff contends that the ALJ failed to properly apply the appropriate legal standards in assessing Plaintiff's wife's testimony because he failed to weigh her statements in accordance with required factors in SSR 06-03p, and that the ALJ also failed to specifically address a number of portions of her testimony.  The Commissioner argues that the testimony of Plaintiff's wife was appropriately considered.  The Court agrees with the Commissioner.

The Social Security Ruling specifically states that "[c]onsistent with 20 C.F.R. 404.1513(d)(4) and 416.913(d)(4), we also consider evidence provided by other 'non-medical sources' such as spouses . . . ."  SSR 06-03P (S.S.A.), 2006 WL 2329939, at *3.  Further, it states that in considering evidence from "non-medical sources . . . such as spouses . . . it would be appropriate to consider factors such as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other relevant factors that tend to support or refute the evidence."  SSR 06-03P, at *4-5.  Spousal testimony is considered other non-medical testimony, even if the opinion is not given in a professional capacity.  If the ALJ rejects subjective testimony, the reasons for rejection must be "set forth with sufficient specificity" to enable a reviewing court to decide whether the determination is

supported by sufficient evidence. *Ferraris v. Heckler*, 728 F.2d 585, 587 (2d Cir. 1984).  The ALJ must refer to specific evidence from the record that substantially supports his determination.  *Id.*  An ALJ need not "specifically discuss the weight given to each piece of evidence considered if the rationale for [his] opinion can be gleaned from other portions of [his] decision . . . ."  *Manchester v. Astrue*, No. 77:08-CV-078, 2009 WL 2568579, at *8 (N.D.N.Y. Aug. 19, 2009).

Plaintiff's wife testified as to how long they knew each other (T 308), Plaintiff's alleged convulsions and vomiting (T 309-10), Plaintiff's inability to hold a job (T 311-12), and her guestimate that Plaintiff had about seven "spells" the month before the hearing, witnessing "probably" five of them (T 313).  Accordingly, the ALJ considered her testimony in assessing Plaintiff's "history of seizure-like symptoms," which is presumably inclusive of her statements regarding Plaintiff's vomiting, convulsions, and episodes.  The ALJ discredits this testimony by presenting objective medical evidence to the contrary, as well as Plaintiff's own testimony regarding his ability to drive and that his driving privileges had never been restricted.  T 27.  The ALJ also considered Plaintiff's wife's testimony that Plaintiff was incapable of holding a job, but the ALJ discredits this testimony with Plaintiff's work history and reasons for leaving certain employment.  T 31-32.  While the ALJ does not specifically address each statement from Plaintiff's wife's testimony, nor does he specifically state the weight he gives to her opinion, the weight he gave can be gleaned from the specific medical evidence that discredits her opinion.  Accordingly, the ALJ applied the appropriate legal standards in assessing the testimony of Plaintiff's wife.

### G.     Whether the ALJ's Step 4 determination is supported by substantial evidence

In Step Four of the evaluation, the ALJ found that Plaintiff could perform his past relevant work as a housekeeper at a nursing facility due to the fact that the past employment "required Plaintiff to work at no more than a medium exertional level, did not expose Plaintiff to any heights or dangerous machinery, and involved only simple, routine work."  T 33. Plaintiff contends that the ALJ's Step 4 determination is not supported by substantial evidence.  Specifically, Plaintiff claims that the ALJ failed to note the mental demands of the work or the inconsistency between Plaintiff's testimony regarding his prior work and the ALJ's RFC determination.  The Commissioner argues that the Plaintiff failed to meet the burden of proof in the Step 4 analysis.

If a claimant proceeds to Step 4 of the evaluation, the claimant "must show that he is unable to continue his past relevant vocational work."  *Ferraris*, 728 F.2d at 584.  In doing so, the claimant must show "an inability to return to [his] previous specific job *and* an inability to perform [his] past relevant work generally."  *Jasinski v. Barnhart*, 341 F.3d 182, 185 (2d Cir. 2003) (citing to *Jock v. Harris*, 651 F.2d 133, 135 (2d Cir. 1981) and SSR 82-62, 1982 WL 31386, *at 3).  The ALJ assesses a claimant's RFC with the physical and mental demands of his/her past relevant work, and must consider the following: (1) a finding of fact as to the individual's RFC; (2) a finding of fact as to the physical and mental demands of the past job/occupation; and (3) a finding of fact that the individual's RFC would permit a return to his or her past job or occupation.  *See* 20 C.F.R. § 404.1560(b); *see also* SSR 82-62, at *4. "Reasonable inferences may be drawn, but presumptions, speculations, and suppositions must not be used."  SSR 82-62, at *4.

The ALJ's determination that Plaintiff failed to meet the burden necessary to preclude a finding that he cannot perform his prior employment as a nursing facility housekeeper is supported by substantial evidence.  As previously noted, the ALJ's determination for Plaintiff's RFC is supported by substantial evidence.  The ALJ also determined that Plaintiff's job as a housekeeper "entailed only simple routine work that was usually performed by the [Plaintiff] either alone or with only one other person . . . ."  T 33.  This finding is consistent with Plaintiff's testimony regarding that position insofar as the Plaintiff stated that his job was "mainly just moping, sweeping and using the floor machine the keep the floors clean."  T 286. Plaintiff also testified that the job did not involve any significant lifting and carrying unless someone else was there to help him.  T 286-87.  Plaintiff did not allege that he was exposed to any heights or that the job was more than low stress or simple routine work.

Plaintiff also takes issue with the fact that the ALJ precludes Plaintiff from working with "dangerous machinery," but nevertheless finds that he is able to work at a job that required him to occasionally use a floor cleaning machine.  Plaintiff did not indicate how it would be dangerous for him to work a floor cleaner, especially if he is capable of independently driving a car, nor did he allege that a floor cleaning machine is dangerous.  Regarding the chemicals that Plaintiff would work with, the ALJ found that Dr. Verma opined that Plaintiff had a limited but satisfactory ability to be aware of normal hazards and to take appropriate precautions.  T 32. Further, Plaintiff did not leave his housekeeping job for medical reasons, but to pursue another job.  T 287.  Accordingly, this Court finds that the ALJ's determination that Plaintiff did not meet his burden in establishing that he was incapable of performing past work was

supported by substantial evidence.[1]

**CONCLUSION**

For the foregoing reasons, the Plaintiff's motion on the pleadings is DENIED,

and Defendant's motion on the pleadings is AFFIRMED.

IT IS SO ORDERED.

Dated: March 19, 2013

Thomas J. McAvoy
Senior, U.S. District Judge

---

[1]This Court's consideration of Dr. Paul Kent's statement to the Appeals Council does not change this analysis.